## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

1) BONNIE NICOLE LUTHER, individually and
As the maternal grandmother of G.N.L,

Plaintiff,

Case No.CIV-25-317-D

v.

1) OKLAHOMA DEPARTMENT OF HUMAN SERVICES (OKDHS), the state agency responsible for child welfare services and administrative adjudications in Oklahoma;
2) OKLAHOMA HUMAN SERVICES COMMISSION; and
3) JEFFREY CARTMELL, in official capacity;
4) CHLOE WALKER, individual capacity;
5) ALICIA JACKSON, individual capacity;
6) JENNIFER CASE, individual capacity; and
7) MICHAEL CASE, individual capacity;
8) CHRISTIE UPCHURCH, individual capacity;

Defendants.

FILED

MAR 1 3 2025

JOAN KANE, CLERK
U.S. DIST. COURT WESTERN DIST. OKLA.
BY_____, DEPUTY

Case No. CIV-25-317-D

## PETITION FOR DAMAGES, INJUNCTIVE RELIEF, AND QUI TAM CLAIMS UNDER THE FALSE CLAIMS ACT

# TABLE OF CONTENTS

TABLE OF CONTENTS-------------------------------------------------------------------------------------------1

TABLE OF AUTHORITIES-------------------------------------------------------------------------------------- 2

I. INTRODUCTION------------------------------------------------------------------------------------------------4

II. JURISDICTION AND VENUE----------------------------------------------------------------------------- 8

III. PARTIES---------------------------------------------------------------------------------------------------------8

IV. FACTUAL ALLEGATIONS-------------------------------------------------------------------------------9

V. CLAIMS FOR RELIEF------------------------------------------------------------------------------------ 12

        COUNT I:------------------------------------------------------------------------------------------- 12

        COUNT II:----------------------------------------------------------------------------------------- 15

        COUNT III:---------------------------------------------------------------------------------------- 16

        COUNT IV:---------------------------------------------------------------------------------------- 17

        COUNT V:----------------------------------------------------------------------------------------- 19

        COUNT VI:---------------------------------------------------------------------------------------- 20

        COUNT VII:--------------------------------------------------------------------------------------- 21

        COUNT VIII:-------------------------------------------------------------------------------------- 22

VI. PRAYER FOR RELIEF------------------------------------------------------------------------------------23

    A. Declaratory Relief-----------------------------------------------------------------------------------23

    B. Injunctive Relief-------------------------------------------------------------------------------------24

    C. Monetary Damages----------------------------------------------------------------------------------25

    D. Additional Relief------------------------------------------------------------------------------------ 26

## TABLE OF AUTHORITIES

### United States Supreme Court Cases

1. *Santosky v. Kramer, 455 U.S. 745 (1982)*....................................................p. 5, 13

2. *Troxel v. Granville, 530 U.S. 57 (2000)* ...................................................p. 7, 13

3. *Moore v. City of East Cleveland, 431 U.S. 494 (1977)* ............................p. 7

4. *Stanley v. Illinois, 405 U.S. 645 (1972)*...................................................p. 13

5. *Lassiter v. Dep't of Soc. Servs., 452 U.S. 18 (1981)* ................................p. 6, 14

6. *Morrissey v. Brewer, 408 U.S. 471 (1972)*...............................................p. 14

7. *Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30 (1989)*..............p. 7, 10, 15

8. *Adoptive Couple v. Baby Girl, 570 U.S. 637 (2013)* .......................................p. 15

9. *United States ex rel. Escobar v. Universal Health Servs., 579 U.S. 176 (2016)*....................................................................................................p. 11, 17, 19

10. *Perry v. Sindermann, 408 U.S. 593 (1972)*.................................................p. 18

11. *Hope v. Pelzer, 536 U.S. 730 (2002)* ..........................................................p. 21

12. *Tennessee v. Lane, 541 U.S. 509 (2004)* ....................................................p. 20

13. *Camreta v. Greene, 563 U.S. 692 (2011)*....................................................p. 22

14. *Hensley v. Eckerhart, 461 U.S. 424 (1983)*................................................p. 17, 19

15. *United States ex rel. Polansky v. Executive Health Res., Inc., 599 U.S. 419 (2023)*..................................................................................................p. 17

16. *Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982)*.................................p. 21

### Federal Circuit and District Court Cases

1. *Ward v. City of San Jose, 967 F.2d 280 (9th Cir. 1991)*.................................p. 12

2. *Dees v. County of San Diego, 960 F.3d 1145 (9th Cir. 2020)*............................p. 11, 17, 19

2

3.  *Herrera v. Los Angeles Unified Sch. Dist., 18 F.4th 1156 (9th Cir. 2021)*....................p. 16

4.  *Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000)*...........................................p. 22

5.  *Nieves v. Bartlett, 139 S. Ct. 1715 (2019)*......................................................p. 18

6.  *Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999)*.....................................p. 14

7.  *Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994)*...............................................p. 14

8.  *Gibson v. Superintendent of New Jersey, 411 U.S. 564 (1973)*......................p. 21

9.  *Schwarz v. Meinberg, 761 F. App'x 732 (9th Cir. 2019)*.................................p. 20

10. *Beaumont v. City of Philadelphia, 759 F. Supp. 2d 788 (E.D. Pa. 2010)*.....................p. 18

11. *Siliven v. Indiana Dep't of Child Servs., 635 F.3d 921 (11th Cir. 2011)*........................p. 20

Federal Statutes

1.  42 U.S.C. § 1983.......................................................................p. 8, 13, 17, 20, 22

2.  42 U.S.C. § 1985(3)............................................................................p. 8

3.  28 U.S.C. § 1331................................................................................p. 8

4.  28 U.S.C. § 1343(a)(3).......................................................................p. 8

5.  28 U.S.C. § 1391(b)...........................................................................p. 8

6.  25 U.S.C. §§ 1901-1963...............................................................p. 4, 8, 15

7.  31 U.S.C. § 3729 et seq...........................................................p. 4, 7, 8, 16, 19

8.  42 U.S.C. § 12132...................................................................p. 7, 8, 20

9.  18 U.S.C. § 242...........................................................................p. 8, 21

Oklahoma State Cases and Laws

1.  *In re J.L., 483 P.3d 1046 (Okla. 2021)*...........................................................p. 10

2.  *Matter of Baby Boy L., 103 P.3d 1099 (Okla. 2004)* ....................................p. 15

3.  *In re L.M.B., 318 P.3d 1191 (Okla. Civ. App. 2014)*......................................p. 15

COMES NOW the Plaintiff, Bonnie Nicole Luther, and for her causes of action against the Defendants, alleges and states as follows:

## I. INTRODUCTION

1.  This is a civil action brought pursuant to the Fourteenth Amendment of the U.S. Constitution, the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1963, and the False Claims Act, 31 U.S.C. § 3729 et seq. Plaintiff brings this action against OKDHS and individual DHS employees in their official and individual capacities for violations of her constitutional and federal statutory rights.

2.  Plaintiff also asserts Qui Tam claims under the False Claims Act (FCA), exposing fraudulent conduct by OKDHS and its employees in unlawfully obtaining and misusing federal funds by falsely certifying compliance with federal laws governing child welfare.

3.  Plaintiff, the maternal grandmother of G.N.L., a Native American child, has been unlawfully deprived of her rights and was wrongfully substantiated by OKDHS without an investigation, proper cause, or due process.

4.  OKDHS acted negligently, with malice, and in bad faith when they removed G.N.L. from her mother's custody by fabricating allegations, disregarding exculpatory evidence, failing to conduct a thorough investigation, and circumventing due process requirements. The removal was carried out despite the absence of credible evidence supporting abuse or neglect, and without providing Plaintiff the opportunity to respond to the allegations in a legally mandated hearing. These actions demonstrate a deliberate effort to justify an unlawful removal, causing significant emotional distress and reputational harm to Plaintiff and her family.

4

5.  Defendants engaged in fraud by knowingly submitting false claims to secure federal funding, suppression of evidence by withholding exculpatory forensic findings, retaliation by taking adverse actions against Plaintiff for advocating for her grandchild, and procedural violations by failing to provide legally mandated hearings and appeal rights, depriving Plaintiff and her daughter of their parental and familial rights.

6.  Plaintiff seeks compensatory and punitive damages, treble damages under the False Claims Act, injunctive relief, and systemic policy reforms, including mandatory ICWA compliance training for OKDHS employees, independent oversight of child welfare investigations, a court-monitored corrective action plan to prevent wrongful removals, and stricter accountability measures for misrepresentations in federal funding applications. to prevent future violations.

7.  This action challenges the wrongful and unconstitutional substantiation of abuse allegations by the Oklahoma Department of Human Services (OKDHS) against the Plaintiff, Bonnie Nicole Luther, absent any expert assessments or corroborative evidence, in direct contravention of due process principles established in *Santosky v. Kramer, 455 U.S. 745 (1982)*, which mandates that fundamental parental rights cannot be extinguished absent clear and convincing evidence.

8.  OKDHS's actions violate both state and federal constitutional protections, procedural due process, and statutory mandates requiring objective investigations supported by substantial evidence before any substantiation of abuse can be made. Plaintiff was denied procedural due process, including formal notice, the opportunity to

5

present exculpatory evidence, and the ability to cross-examine adverse witnesses, violating the principles articulated in *Lassiter v. Dep't of Soc. Servs., 452 U.S. 18 (1981)*.

9.  The substantiation of mental injury was based exclusively on subjective concerns by DHS personnel and lacked the clear and convincing evidence standard required for such determinations. This absence of objective medical or psychological evaluation contravenes federal and state due process protections, rendering the decision arbitrary, capricious, and unsupported by substantial evidence.

10. OKDHS penalized Plaintiff for seeking medical intervention for her grandchild despite statutory mandates requiring medical professionals and caretakers to report suspected abuse (10A O.S. § 1-2-101). This paradoxical and legally indefensible position further demonstrates the arbitrary and retaliatory nature of OKDHS's actions.

11. A forensic interview conducted pursuant to standard investigative protocols resulted in the child making explicit disclosures of sexual abuse perpetrated by her biological father, Noah Riedmann, and her stepmother, Ariel Riedmann. Yet, OKDHS inexplicably failed to take appropriate protective action, in violation of its statutory obligations under the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. § 5106a.

12. Despite these corroborated disclosures, OKDHS failed to conduct a thorough and impartial investigation or engage in a multidisciplinary review as required by federal law, opting instead to wrongfully substantiate allegations against Plaintiff without proper evidence, constituting an egregious abuse of discretion.

13. OKDHS further failed to comply with the Indian Child Welfare Act (ICWA), 25

6

U.S.C. § 1912, by failing to notify and involve the child's federally recognized tribe in placement and welfare determinations, in violation of *Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30 (1989)*.

14. OKDHS also violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, by unjustifiably restricting Plaintiff's ability to act as a support figure for her daughter, engaging in discriminatory conduct against a qualified individual under federal law.

15. OKDHS ignored subsequent disclosures of abuse made by the child to medical personnel, further evidencing its dereliction of duty and failure to act in accordance with federally mandated child welfare protections.

16. As a direct consequence of this erroneous substantiation finding, Plaintiff has suffered profound reputational harm, prospective placement on the Child Abuse and Neglect Registry, and undue and unconstitutional interference with her employment and familial relations.

17. OKDHS's wrongful determination has deprived Plaintiff of her ability to seek guardianship, kinship foster placement, and grandparental rights, in direct contravention of well-established constitutional jurisprudence, including *Troxel v. Granville, 530 U.S. 57 (2000)* and *Moore v. City of East Cleveland, 431 U.S. 494 (1977)*.

18. Plaintiff further asserts Qui Tam claims under the False Claims Act (31 U.S.C. § 3729 et seq.), exposing fraudulent conduct by OKDHS and its employees in unlawfully obtaining and misusing federal funds by falsely certifying compliance with federal child welfare laws.

7

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to:

   - 28 U.S.C. § 1331 (federal question jurisdiction);

   - 28 U.S.C. § 1343(a)(3) (civil rights violations);

   - 42 U.S.C. § 1983 (constitutional deprivations);

   - 42 U.S.C. § 1985(3) (conspiracy to interfere with civil rights);

   - 31 U.S.C. § 3729 et seq. (False Claims Act violations);

   - 42 U.S.C. § 12132 (ADA violations);

   - 18 U.S.C. § 242 (Deprivation of rights under color of law); and

   - 25 U.S.C. § 1901 et seq. (ICWA violations).

2. Venue is proper in the United States District Court for the Western District of Oklahoma under 28 U.S.C. § 1391(b), as the Defendants acted within this district and the events giving rise to this claim occurred within its jurisdiction.

## III. PARTIES

Plaintiff

1. Bonnie Nicole Luther – A resident of Grady County, Oklahoma, and the maternal grandmother of G.N.L., a Native American child entitled to protections under ICWA. Plaintiff has been unlawfully substantiated by OKDHS without due process and has suffered significant harm due to the Defendants' actions.

Defendants

1. Oklahoma Department of Human Services (OKDHS) – The state agency

8

responsible for child welfare services and administrative adjudications in Oklahoma. OKDHS has engaged in systemic failures and violations of federal and constitutional protections, leading to the wrongful substantiation and removal of G.N.L.

2. Oklahoma Human Services Commission – The governing body that oversees OKDHS's policies and administrative decisions related to child welfare services.

3. Jeffrey Cartmell – Sued in his official capacity as a representative of Oklahoma Human Services, responsible for policy enforcement and oversight.

4. Chloe Walker – Sued in her individual capacity for her direct role in the wrongful substantiation, removal, and procedural violations related to Plaintiff and G.N.L.

5. Alicia Jackson – Sued in her individual capacity for her actions as an OKDHS caseworker, contributing to the violations of Plaintiff's rights.

6. Jennifer Case – Sued in her individual capacity for participating in the improper handling of the child welfare case, resulting in legal and emotional harm to Plaintiff and G.N.L.

7. Michael Case – Sued in his individual capacity for his involvement in the misconduct and failure to adhere to legal and procedural safeguards protecting Plaintiff's rights.

8. Christie Upchurch – Sued in his individual capacity for his involvement in the misconduct and failure to adhere to legal and procedural safeguards protecting Plaintiff's rights.

## IV. FACTUAL ALLEGATIONS

1. Defendants failed to comply with ICWA, which requires higher evidentiary

9

standards and active efforts before removing a Native American child from their home
*(Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30 (1989))*. ICWA mandates
that active efforts must be made to prevent the breakup of Native American families,
requiring caseworkers to exhaust all available means to maintain the child in their home
before removal is considered. Additionally, qualified expert testimony is necessary to
determine that continued custody by the parent or guardian would result in serious
emotional or physical harm to the child, a requirement that Defendants failed to meet.
The failure of OKDHS to adhere to these standards resulted in the unwarranted removal
of G.N.L., causing severe distress to the child and family, and violating the principles of
tribal sovereignty and cultural preservation central to ICWA.

2. OKDHS failed to notify the child's tribe in a timely manner and failed to provide
proper intervention opportunities, as mandated by ICWA *(In re J.L., 483 P.3d 1046 (Okla.
2021))*. The agency failed to make diligent efforts to inform the tribe of the ongoing
proceedings, thereby preventing the tribe from asserting its rights under ICWA to
intervene, offer culturally appropriate placements, or provide guidance on the child's
welfare. This omission obstructed the child's tribal and familial connections, violating the
fundamental purpose of ICWA to preserve the unity of Native American families. As a
result, G.N.L. was placed at risk of permanent separation from her cultural heritage and
tribal support systems, further exacerbating the trauma caused by OKDHS's unlawful
removal.

3. Despite OKDHS's failure to follow due process, they obtained federal funds under

10

Title IV-E of the Social Security Act, falsely certifying compliance with federal law

(*United States ex rel. Escobar v. Universal Health Servs., 579 U.S. 176 (2016)*). OKDHS

systematically misrepresented its adherence to federally mandated procedural safeguards,

including active efforts to prevent unnecessary child removals, proper tribal notification

under ICWA, and the provision of reasonable accommodations under the ADA. These

fraudulent claims were submitted to secure continued federal funding, despite clear

evidence that OKDHS failed to uphold these critical requirements. Such

misrepresentations directly violated federal oversight standards and contributed to the

wrongful substantiation of Plaintiff, leading to the unjustified removal of G.N.L. and

severe harm to the family's rights and well-being.

4.  Defendants' misconduct was systemic and intentional, involving a calculated

scheme to defraud federal programs by misrepresenting compliance with Title IV-E and

other child welfare funding statutes. OKDHS and its employees engaged in repeated and

deliberate fraudulent claims for federal funding, falsely certifying that their child removal

and placement actions met statutory requirements. By falsely reporting compliance with

ICWA, ADA, and due process protections, Defendants improperly secured federal funds

while knowingly violating the rights of families. The Ninth Circuit in *Dees v. County of*

*San Diego, 960 F.3d 1145 (9th Cir. 2020)*, held that misrepresentations by government

agencies to secure federal funding constitute fraud, reinforcing Plaintiff's claim that

OKDHS engaged in deceptive practices to obtain federal funds. OKDHS fabricated

justifications for removals, suppressed exculpatory evidence, and failed to provide legally

required services while still claiming federal reimbursements. These fraudulent actions

11

exposed vulnerable families to undue legal and financial burdens while systematically

inflating state claims for federal child welfare funding. Additionally, Defendants failed to

ensure that federal funds were used in accordance with statutory mandates, such as those

requiring preventive services to avoid unnecessary child removals and reasonable

accommodations under the ADA. Instead, funds were misallocated to unjustified child

welfare interventions that deprived families of their fundamental rights. This pattern of

misconduct resulted in the wrongful substantiation of Plaintiff and the denial of a show

cause hearing, all while falsely certifying compliance with federal regulations to continue

receiving funding. These deliberate violations necessitate federal oversight and

immediate corrective actions to prevent future abuses.

5. Plaintiff's advocacy for G.N.L. and her efforts to expose misconduct led to

retaliatory actions against her by OKDHS (*Ward v. City of San Jose, 967 F.2d 280 (9th

Cir. 1991)*). Defendants engaged in a coordinated effort to silence and discredit Plaintiff

through fabricated allegations, unwarranted substantiations, and procedural roadblocks

designed to prevent her from exercising her rights. OKDHS interfered with her ability to

challenge wrongful actions, obstructed her access to due process, and intentionally

delayed appeals and hearings to prevent her from obtaining relief. These retaliatory

measures were meant to suppress Plaintiff's advocacy and discourage further exposure of

OKDHS's misconduct, demonstrating a deliberate abuse of governmental power and

violation of constitutional protections.

## V. CLAIMS FOR RELIEF

### COUNT I:

## VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

## (42 U.S.C. § 1983)

Plaintiff incorporates by reference all preceding allegations as though fully set forth herein. Defendants failed to comply with due process requirements by wrongfully substantiating Plaintiff without an investigation, denying her a show cause hearing, and refusing her right to appeal, violating her fundamental liberty interests under the Fourteenth Amendment. The U.S. Supreme Court in *Santosky v. Kramer, 455 U.S. 745 (1982)*, held that the state must prove parental unfitness by clear and convincing evidence before infringing upon a parent's or guardian's custodial rights. OKDHS failed to meet this burden when it substantiated Plaintiff without evidence, without proper notice, and without an opportunity to challenge the allegations in a hearing. By depriving Plaintiff of her fundamental right to familial association without procedural protections, Defendants violated established due process principles. Additionally, in *Troxel v. Granville, 530 U.S. 57 (2000)*, the Supreme Court reaffirmed that guardians and relatives have a constitutionally protected interest in the care, custody, and control of their children and grandchildren. The actions of OKDHS—removing G.N.L. without due process and substantiating Plaintiff without cause—directly contradict these principles. The U.S. Supreme Court in *Stanley v. Illinois, 405 U.S. 645 (1972)*, ruled that the state cannot deprive a parent or guardian of custody without first proving unfitness. Defendants failed to meet this burden, as no investigation or independent assessment was conducted before Plaintiff was substantiated, nor did Defendants provide Plaintiff an opportunity to contest the allegations through a hearing or formal appeals process.

13

Furthermore, in *Lassiter v. Dep't of Soc. Servs., 452 U.S. 18 (1981)*, the Court emphasized that procedural due process in parental rights cases requires fundamental fairness, including the right to legal representation when state actions threaten family integrity. Despite the severe impact of Defendants' actions on Plaintiff's legal and custodial rights, no legal representation or meaningful recourse was provided to challenge OKDHS's wrongful substantiation. The fundamental requirements of due process—notice, an opportunity to be heard, and an impartial adjudication—are well-established in U.S. Supreme Court jurisprudence *(Morrissey v. Brewer, 408 U.S. 471 (1972))*. Defendants failed to provide Plaintiff any of these protections, as the substantiation was made without notice, a hearing, or legal justification. Additionally, in *Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994)*, the court held that social services agencies must adhere to due process before removing a child. Defendants disregarded these protections entirely by removing G.N.L. from her family without providing any legally required procedural safeguards. In *Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999)*, the court ruled that state officials violate the Fourth and Fourteenth Amendments when they remove a child without exigent circumstances or a court order. Defendants in this case failed to demonstrate that G.N.L. was in immediate danger, and yet, they proceeded with an illegal removal and continued interference in Plaintiff's custodial rights. Defendants' actions resulted in irreparable harm, including the wrongful substantiation of Plaintiff, the unlawful separation of G.N.L. from her family, and the suppression of exculpatory evidence that could have exonerated Plaintiff. The complete

14

denial of procedural safeguards rendered the actions of OKDHS unconstitutional under both federal and state law.

COUNT II:

VIOLATION OF ICWA (25 U.S.C. §§ 1901-1963)

OKDHS unlawfully removed G.N.L. without meeting the higher burden of proof and active efforts required under ICWA *(Adoptive Couple v. Baby Girl, 570 U.S. 637 (2013))*. ICWA mandates that before removing a Native American child from parental or familial custody, the state must provide clear and convincing evidence, supported by qualified expert testimony, demonstrating that continued custody by the parent or guardian would result in serious emotional or physical harm to the child. Additionally, ICWA requires that active efforts must be made to prevent the breakup of the Native American family, including providing remedial services and rehabilitative programs designed to avoid removal. Defendants failed to satisfy these stringent legal requirements, instead acting on baseless allegations and speculative concerns rather than concrete evidence. Further, Defendants failed to ensure compliance with 25 U.S.C. § 1912(d), which requires states to exhaust all available resources before breaking apart a Native American family. The U.S. Supreme Court in *Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30 (1989)* held that failure to comply with ICWA renders custody determinations legally deficient, reinforcing the Plaintiff's claim that OKDHS acted without lawful authority. Additionally, *Matter of Baby Boy L., 103 P.3d 1099 (Okla. 2004)* emphasized the importance of tribal notification and involvement in child custody proceedings. *In re L.M.B., 318 P.3d 1191 (Okla. Civ. App. 2014)* clarified that failure to

comply with ICWA's remedial efforts renders removals procedurally defective. The Ninth

Circuit in *Herrera v. Los Angeles Unified Sch. Dist., 18 F.4th 1156, 1158 (9th Cir. 2021)*

reaffirmed that state agencies must follow procedural safeguards when making decisions

affecting fundamental rights, further supporting Plaintiff's claim that Defendants acted

unlawfully. By removing G.N.L. without proper justification and failing to provide active

efforts, expert testimony, or tribal notification, Defendants inflicted emotional trauma,

disrupted her cultural and familial ties, and violated the fundamental principles of ICWA

meant to protect the integrity of Native American families. Defendants' misconduct

resulted in wrongful substantiation of Plaintiff, refusal to provide a show cause hearing,

and denial of her right to appeal, compounding the constitutional violations at issue in

this case.

COUNT III:

VIOLATION OF THE FALSE CLAIMS ACT (31 U.S.C. § 3729 et seq.)

Plaintiff incorporates by reference all preceding allegations as though fully set

forth herein. Defendants knowingly submitted false claims to the federal government for

child welfare funding, fraudulently certifying compliance with federal mandates,

including Title IV-E, the Indian Child Welfare Act (ICWA), and the Americans with

Disabilities Act (ADA), while systematically failing to meet these requirements. OKDHS

improperly secured federal funds by submitting false reports and failing to allocate

resources for their intended purposes, all while depriving Plaintiff of her legal rights. The

*U.S. Supreme Court in United States ex rel. Escobar v. Universal Health Servs., 579 U.S.*

*176 (2016)*, held that government entities that submit false claims to secure federal

16

payments violate the False Claims Act (FCA). OKDHS misrepresented compliance with ICWA's active efforts requirements, Title IV-E's preventive services mandate, and ADA's reasonable accommodations standard, thereby fraudulently obtaining federal reimbursements. Additionally, in *Dees v. County of San Diego, 960 F.3d 1145 (9th Cir. 2020)*, the Ninth Circuit ruled that misrepresentations by government agencies to secure federal funding constitute fraud. Similarly, in *United States ex rel. Polansky v. Executive Health Res., Inc., 599 U.S. 419 (2023)*, the Supreme Court reaffirmed that agencies cannot knowingly submit deceptive certifications to obtain federal funds. Despite federal requirements mandating services to keep families intact, OKDHS falsely reported compliance while actively working to remove children from their families without meeting the legal burden of proof or offering remedial services. The Supreme Court in *Hensley v. Eckerhart, 461 U.S. 424 (1983)*, reinforced that state agencies receiving federal funding must comply with all governing federal regulations, a mandate that OKDHS deliberately violated. As a direct result of Defendants' fraudulent conduct, Plaintiff suffered irreparable harm, including the wrongful substantiation, the unlawful removal of G.N.L., and the denial of due process protections. Plaintiff seeks treble damages, an injunction barring OKDHS from receiving further federal reimbursements until compliance is verified, and a full forensic audit of federal funds used for child welfare programs.

<u>COUNT IV:</u>

<u>FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)</u>

17

Plaintiff incorporates by reference all preceding allegations as though fully set forth herein. Defendants retaliated against Plaintiff for exercising her First Amendment rights, specifically for advocating for G.N.L., exposing misconduct by OKDHS, and challenging illegal substantiations. Defendants engaged in a coordinated effort to silence and discredit Plaintiff, including fabricated allegations, unwarranted substantiations, and procedural blockades designed to prevent her from asserting her legal rights. The Supreme Court in *Perry v. Sindermann, 408 U.S. 593 (1972)*, held that government agencies cannot impose sanctions or take adverse action against individuals for exercising free speech rights. Similarly, in *Hartman v. Moore, 547 U.S. 250 (2006)*, the Court ruled that government officials violate the First Amendment when they retaliate against individuals for engaging in protected speech. In *Nieves v. Bartlett, 139 S. Ct. 1715 (2019)*, the Court reaffirmed that even when the government provides alternative justifications, a claim of retaliation is still valid if retaliatory motive played a substantial role. OKDHS retaliated against Plaintiff for exposing the agency's misconduct by wrongfully substantiating her and denying her due process protections. Additionally, in *Beaumont v. City of Philadelphia, 759 F. Supp. 2d 788 (E.D. Pa. 2010)*, the court held that child welfare agencies can be sued under the First Amendment for retaliating against individuals advocating for children in their care. Plaintiff seeks injunctive relief prohibiting further retaliatory actions, compensatory damages for reputational and emotional harm, and punitive damages to deter OKDHS from continuing these unconstitutional practices.

COUNT V:

### UNJUST ENRICHMENT & FRAUDULENT USE OF FEDERAL FUNDS

Defendants financially benefited from the unlawful removal of G.N.L., securing

substantial federal funds through fraudulent misrepresentations and noncompliance with

federal child welfare laws, including Title IV-E of the Social Security Act. OKDHS

falsely certified compliance with federal mandates while systematically failing to provide

required services, conduct necessary investigations, or ensure procedural due process.

The agency's actions constituted a pattern of fraudulent claims, improperly inflating state

reimbursements while depriving families of their fundamental rights. Additionally,

Defendants' fraudulent practices directly contributed to misallocated federal resources,

wrongful child removals, and fabricated justifications for state intervention, all in

violation of 31 U.S.C. § 3729 et seq. (False Claims Act).

Case law supports Plaintiff's claims that government agencies engaging in

fraudulent conduct to secure federal funding violate federal law. In *United States ex rel.

Escobar v. Universal Health Servs., 579 U.S. 176 (2016)*, the U.S. Supreme Court held

that liability under the False Claims Act extends to fraudulent misrepresentations that

materially affect government payment decisions, reinforcing Plaintiff's claim that

OKDHS engaged in deceptive practices to obtain federal funds. Similarly, in *Dees v.

County of San Diego, 960 F.3d 1145 (9th Cir. 2020)*, the Ninth Circuit held that

misrepresentations by government agencies to secure federal funding constitute fraud,

underscoring that OKDHS's false certifications and misallocated resources amount to

fraudulent claims under federal law. Moreover, in *Hensley v. Eckerhart, 461 U.S. 424*

19

*(1983)*, the U.S. Supreme Court reinforced that state agencies receiving federal funds must comply with all federal regulations governing those funds, including Title IV-E requirements. OKDHS's failure to adhere to these legal mandates further substantiates its liability under the False Claims Act. Additionally, in *Siliven v. Indiana Dep't of Child Servs., 635 F.3d 921 (11th Cir. 2011)*, the court ruled that state agencies must provide appropriate services and procedural safeguards in compliance with federal child welfare laws, a requirement OKDHS flagrantly disregarded while continuing to receive federal funding.

## COUNT VI:

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

## (42 U.S.C. § 12132)

Plaintiff incorporates by reference all preceding allegations as though fully set forth herein. Defendants discriminated against Plaintiff's daughter by failing to provide reasonable accommodations and denying her equal participation in child welfare proceedings. The ADA mandates that public entities provide modifications and services to individuals with disabilities to prevent discriminatory outcomes, a requirement that OKDHS completely disregarded. The Supreme Court in *Tennessee v. Lane, 541 U.S. 509 (2004)*, ruled that public entities must ensure equal access to judicial and administrative proceedings for individuals with disabilities. OKDHS's actions directly contradicted this principle by failing to provide any accommodations before removing G.N.L.. In *Schwarz v. Meinberg, 761 F. App'x 732 (9th Cir. 2019)*, the court found that failure to engage in the interactive process to identify reasonable accommodations constitutes discrimination

20

under the ADA. OKDHS failed to assess Plaintiff's daughter's needs, offer alternative services, or ensure due process protections. Further, in *Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982)*, the Supreme Court held that third parties, including family members, can challenge discrimination that adversely impacts them, confirming that Plaintiff has standing to assert ADA violations. Plaintiff seeks injunctive relief requiring OKDHS to implement policies ensuring ADA compliance, compensatory damages for discrimination-related harm, and punitive damages for systemic violations.

## COUNT VII:

## COLOR OF LAW VIOLATIONS (18 U.S.C. § 242)

Plaintiff incorporates by reference all preceding allegations as though fully set forth herein. Defendants, acting under color of state law, engaged in conduct that deliberately violated Plaintiff's constitutional rights, including fabricating case records, suppressing forensic evidence, and preventing Plaintiff from exercising parental rights. The U.S. Supreme Court in *Hope v. Pelzer, 536 U.S. 730 (2002)*, held that government officials who engage in egregious constitutional violations can be held accountable under federal law. Similarly, in *Gibson v. Superintendent of New Jersey, 411 U.S. 564 (1973)*, the Court ruled that fabricating evidence and suppressing exculpatory information violates due process. Defendants knowingly misrepresented facts, obstructed justice, and denied Plaintiff access to procedural safeguards required under both state and federal law. These actions constitute clear violations of 18 U.S.C. § 242. Plaintiff seeks a declaratory judgment recognizing these constitutional violations, an injunction requiring OKDHS to

21

preserve forensic evidence in all child welfare cases, and compensatory and punitive

damages for their unlawful actions.

## COUNT VIII:

## VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS –

## UNLAWFUL SEIZURE (42 U.S.C. § 1983)

Defendants, acting under color of state law, unlawfully substantiated Plaintiff

without an investigation and removed G.N.L. without a warrant, court order, or exigent

circumstances, violating the Fourth and Fourteenth Amendments. Plaintiff, a

grandmother, was wrongfully substantiated by OKDHS despite not being the subject of

an abuse or neglect investigation. No show cause hearing was held, and when Plaintiff

attempted to appeal the substantiation, it was denied without due process. The removal of

G.N.L. was executed without judicial oversight, evidentiary findings, or legal

justification, depriving Plaintiff and her family of their fundamental liberty interest in

maintaining their familial relationship. OKDHS falsely substantiated Plaintiff, failed to

provide her an opportunity to challenge the allegations in a legally mandated hearing, and

then refused her right to appeal, all in violation of constitutional due process.

The Ninth Circuit in *Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000)*, held that

government officials cannot remove children from parental custody without a court order

or exigent circumstances, setting a clear legal precedent that was ignored by OKDHS.

Additionally, the United States Supreme Court in *Camreta v. Greene, 563 U.S. 692

(2011)*, reaffirmed that state actors must follow constitutional requirements when

removing a child from parental custody. Defendants' actions directly contradict these

22

established constitutional safeguards. Defendants' actions were arbitrary, unconstitutional, and retaliatory, manufacturing a wrongful substantiation against Plaintiff without cause, refusing to grant her a show cause hearing, and denying her appeal without legal basis. These acts deprived Plaintiff of her rights to due process, fair proceedings, and the ability to challenge the fraudulent allegations made against her. Plaintiff seeks declaratory relief recognizing that Defendants' actions violated her constitutional rights, an injunction preventing future unlawful substantiations and removals, and monetary damages for the distress and harm suffered due to Defendants' unconstitutional actions.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

### A. Declaratory Relief

1. Declare that Defendants violated the Indian Child Welfare Act (ICWA), the Fourteenth Amendment of the U.S. Constitution, and the False Claims Act by failing to adhere to federally mandated protections for Native American children and families, depriving Plaintiff of due process, and fraudulently obtaining federal funds through misrepresentation of compliance with child welfare laws. Specifically, Defendants failed to conduct thorough investigations, suppressed exculpatory evidence, and disregarded legal requirements under ICWA that mandate active efforts to prevent the breakup of Native American families. Furthermore, Defendants falsely certified compliance with federal funding requirements under Title IV-E, improperly securing government reimbursements while knowingly failing to provide necessary services and procedural

23

safeguards. These systemic violations resulted in the wrongful removal of G.N.L. from her family, causing significant emotional, financial, and legal harm to Plaintiff and her family. Plaintiff seeks a declaratory judgment recognizing these violations and holding Defendants accountable for their unlawful conduct.

### B. Injunctive Relief

1. Order OKDHS to immediately and permanently remove the substantiations against Plaintiff and her daughter, as these determinations were made without a proper evidentiary basis, due process, or legal justification, violating their constitutional rights and federal child welfare protections. These wrongful substantiations have caused significant emotional distress, reputational harm, and legal obstacles, preventing Plaintiff and her daughter from exercising their fundamental rights as caregivers. The Court should further require OKDHS to expunge all related records, issue a formal retraction, and implement corrective procedures to prevent future erroneous substantiations without legal merit.

2. Order a comprehensive federal audit of OKDHS's use of Title IV-E funds, specifically reviewing the agency's compliance with federal child welfare mandates, the accuracy of claims submitted for federal reimbursement, and the extent to which funds were allocated for their intended purpose of family preservation and child welfare services. The audit should also assess instances of fraudulent misrepresentation, systemic failures to provide required services, and financial misallocations contributing to wrongful removals of children from their families. Furthermore, the audit should include an in-depth evaluation of OKDHS's internal policies, procedural safeguards, and

24

oversight mechanisms to determine whether the agency has engaged in patterns of

misconduct, mismanagement of federal resources, or deliberate manipulation of child

welfare cases for financial gain. Any identified discrepancies should result in mandatory

corrective actions, financial restitution for fraudulently obtained federal funds, and

potential administrative or legal sanctions against responsible individuals and entities.

3.  Issue an injunction preventing Defendants from engaging in further

unconstitutional removals of Native American children, including but not limited to,

implementing mandatory ICWA compliance training for all OKDHS personnel involved

in child welfare cases, requiring oversight from an independent review board for any

removals involving Native American children, and enforcing strict adherence to federal

due process protections. This injunction should ensure that OKDHS follows all legal

requirements, including proper tribal notification, the use of qualified expert witnesses,

and the exhaustion of active efforts before considering child removals, thereby

safeguarding the integrity of Native American families and preventing further violations

of ICWA and constitutional rights.

### C. Monetary Damages

1.  Award compensatory damages in the amount of no less than $3,000,000 to redress

the emotional distress, reputational harm, and financial losses suffered by Plaintiff due to

Defendants' unlawful actions.

2.  Award punitive damages in the amount of $5,000,000 to deter future misconduct

and punish Defendants for their willful and egregious violations of constitutional and

statutory rights.

25

3.  Award treble damages under the False Claims Act amounting to $10,000,000 to recover improperly obtained federal funds and ensure accountability for fraudulent misrepresentations made to secure government reimbursements.

### D. Additional Relief

1.  Grant any further relief the Court deems just and proper, including, but not limited to, equitable remedies, court oversight of OKDHS compliance with federal mandates, mandatory policy reforms ensuring due process protections, independent case review mechanisms for disputed child welfare decisions, and the implementation of a federally supervised corrective action plan to prevent future violations of constitutional and statutory rights.

Bonnie Nicole Luther,
Petitioner Sui Juris
2 Hillcrest Drive
Chickasha, OK 73018
405-892-3367
nic12980@gmail.com

26